NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1017

E. MICHAEL MATTOX,

Plaintiff-Appellant,

v.

INFOTOPIA, INC., TOTAL TIGER, INC.,
MARK LEVINE, and DAVID RICHMOND,

Defendants-Appellees.

_____

DECIDED: May 23, 2005

_____

Before MAYER, CLEVENGER, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge CLEVENGER. Circuit Judge MAYER
dissents.

CLEVENGER, Circuit Judge.

Mattox appeals from the decision of the United States District Court for the

Central District of California granting summary judgment of noninfringement in favor of

Infotopia, Inc., Total Tiger, Inc., Mark Levine, and David Richmond (collectively

"Infotopia"). See Mattox v. Infotopia, No. CV 03-6169, 2004 WL 1638202 (C.D. Cal.

July 22, 2004). Because the district court misconstrued certain claim limitations of the

patent-in-suit, we vacate the grant of summary judgment and remand.

I

United States Patent No. 5,499,961 ("the '961 patent"), entitled "Kneeling-Prone-Kneeling Exercise Device" is generally directed to an exercise device. As described in the patent, a person desiring to use the device kneels on kneepads that are relatively centrally located, places the heels or lower legs in contact with a "heel brace" near the posterior of the machine, and places the arms upon, or grips, a "glide" located near the anterior of the machine. See generally the '961 patent, Figures 1 & 8. To perform exercise, the person moves the glide forward, which elongates the torso. The motion is followed by contracting the torso, to resume a kneeling position.

The parties have stipulated that claim 1 is representative. See Mattox, 2004 WL 1638202, at *1. Claim 1 of the '961 patent is directed to a device. It states:

1. An exercise device having:

a glide for supporting arms of a user in a forward kneeling position and gliding along a support surface[1] while extending the body in a forward direction;

a heel brace adapted to be positioned behind and bear against the rear surface of the heels of a user for restraining upward movement of the heels of a user in a forward kneeling position and as the user pushes the glide in the forward direction;

a knee rest for supporting knees of a user in a forward kneeling position as the user glides the glide in the forward direction; and

a connector between the knee rest and the heel brace to maintain the heel brace and the knee rest in a relatively fixed position, at least while the user rests his or her knee on the knee rest and pushes the glide in the forward direction;

---

1    The word "surface" was made part of the claim on February 19, 2002, by Certificate of Correction.

05-1017                                2

whereby as the user pushes the glide in the forward direction, with knees on the knee rest and heels abutting the heel brace, the user can use at least one of back, buttock and leg muscle groups to extend and support his or her body and return his or her body to the kneeling position.

The '961 patent, claim 1 (emphases added).

Among others, the district court construed the "glide" and "heel brace" limitations. According to the district court, the "glide" limitation defines: "a device that supports the arms of a user to facilitate the forward and backward movement of the user along an object that holds up and moves the user in a certain course," Mattox, 2004 WL 1638202, at *7, while the "heel brace" limitation defines: "a heel brace made to fit so it is positioned behind and bears against the rear surface of the heels of a user for restraining upward movement of the heels of a user in a forward kneeling position and as the user pushes the glide in the forward direction," id. at *9.

Based on its interpretation of the "glide" and "heel brace" limitations, the district court entered summary judgment in favor of Infotopia. The reasons, according to the district court, are that "[u]nlike the '961 Patent, the [accused device] employs the use of a wheeled structure that glides on the floor, rather than along a support . . . [and] [u]nlike the '961 Patent, whose 'heel brace' restrains the user's legs by bearing against the user's heels, the [accused device] . . . restrains the user's legs by bearing against the user's ankles." Id. at *11.

Mattox appeals, and we have jurisdiction to review this decision pursuant to 28 U.S.C. § 1295(a)(1) (2000).

II

The proper interpretation of the claims of a patent is a legal question, see Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed.

05-1017 3

Cir. 2004), and this court conducts a complete and nondeferential review when a district court grants summary judgment, see Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994).

III

Mattox contests the grant of summary judgment on two points.  First, Mattox contends that the district court erroneously construed the "glide" limitation.  Second, according to Mattox, the trial court either misconstrued or misapplied the "heel brace" limitation.  We agree with Mattox on both points.

A

The district court's misconstruction of the "glide" limitation flows from its misunderstanding of the claim language, "gliding along a support," which according to the district court requires that the glide "moves the user in a certain course," see Mattox, 2004 WL 1638202, at *7.  As the decision on infringement makes clear, the district court understood "in a certain course" to mean along a path directed by a guide.  Put differently, the district court believed that claim 1 defines the "glide" using language that requires the glide to travel along a directional support that limits nonlinear movement, e.g., a "guide track."  See, e.g., the '961 patent, Figure 8.  This is incorrect.

The claim language, "gliding along a support," plainly includes traveling over a floor.  Consequently, the district court erred when it read out of claim 1 embodiments of the glide structure that "glide[] on the floor."  See Mattox, 2004 WL 1638202, at *11.  Absent statements in the intrinsic record to the contrary, where claim language is plainly susceptible to an interpretation that includes the described embodiments, that interpretation is the better interpretation.  See Vitronics Corp. v. Conceptronic, Inc.,

90 F.3d 1576, 1583 (Fed. Cir. 1996) (reasoning that an interpretation that excludes a preferred embodiment is unlikely to be correct).

Such is the case here. A glide that travels along a support surface which can be a floor is depicted in the '961 patent. See, e.g., the '961 patent, Figures 1, 4, 5, 6, & 7. Clearly, as the depicted glide moves along the support surface, it is not subject to the constraints of a "guide track." See id. Moreover, in one embodiment, item 114, which is described as elastic tubing, see the '961 patent, col. 5, l. 38, is not present, see id., col. 9, ll. 50-52. In such an embodiment the only feature controlling the course of the gliding motion is the ability and decisionmaking of the user.

Based on its misapprehension of the claim meaning, the district court erroneously held that the "glide" limitation could not be met. Because the accused device contains "a glide for supporting arms of a user in a forward kneeling position and gliding along a support," the accused device meets the "glide" limitation of the '961 patent. As the district court understood, a glide is a device for facilitating the movement of something. As set forth in the record, the glide of the accused device is clearly capable of supporting the arms of a user in the operation of the device. The user can keep both arms parallel or otherwise. Furthermore, the glide in the accused device facilitates "gliding along a support" because it permits the user to travel over a floor.

B

As Mattox contends, the district court also misconstrued the structure defined by the "heel brace" limitation of the claimed device. The district court construed "adapted to be positioned behind and bear against the rear surface of the heels" to mean that the heel brace must necessarily "restrain[] upward movement of the heels" by touching the

05-1017                                   5

heels of each and every user who operates the exercise device. Under the district court's interpretation, if a user could use an accused device by engaging restraining force against the part of the leg above the rear surface of the heels, then this limitation would not be met. This interpretation is incorrect because it fails to respect that the claim language defines a structural element, not a method of use.

The proper interpretation of this limitation flows from the correct understanding of the term "adapted." The term "adapted" plainly means to make fit (as for a specific or new use or situation). Thus, the language, "heel brace adapted to be positioned behind and bear against the rear surface of the heels," defines a structure fit to be positioned "behind and bear[ing] against the rear surface of the heels" and fit for performing the function of "restraining upward movement of the heels." In other words, the structure defined by the claim language must be capable of performing the function in the manner described. If a user <u>can</u> put his or her heels in contact with the heel brace such that the heel brace restrains the upward movement of the user's heels in the course of operating the device, then the limitation is met.

Notwithstanding the fact that Infotopia's marketing materials state that the user's "heels should be secure" under the bracing structure of the accused device, the district court held that the "heel brace" limitation of the '961 patent could not be met by the accused device. After a review of the record, we are convinced that this holding was based on a misapprehension of the claim meaning. Accordingly, it is vacated. As noted, if an accused device is capable of use so as to restrain upward movement of the heels by engaging the rear surface of the heels with the heel brace, that device literally meets the heel brace limitation.

IV

On this record, the district court did not abuse its discretion in refusing to give effect to the word "surface" as added by the Certificate of Correction. Otherwise, for the reasons discussed above, the grant of summary judgment is vacated and the case is remanded for further proceedings consistent with this opinion.

No costs.


MAYER, Circuit Judge, dissents.